73477. FLYNN et al. v. GOLD KIST, INC.
(353 SE2d 537)

DEEN, Presiding Judge.

Lewis and Diane Flynn entered into a three-year "Output and Requirements Contract and Security Agreement," effective February 1, 1980, with Gold Kist under which the company was to furnish all the supplies, materials, labor, advice, etc., needed to produce and harvest pecans from pecan groves owned and leased by the Flynns. Gold Kist also agreed to market all the pecans produced from the groves. In return, Gold Kist was to receive a fee of 20% above the cost of all materials, equipment, and labor furnished. The Flynns had the right to terminate the contract upon thirty days' notice of a breach of contract if the breach described in the notice was not cured within the thirty-day period.

Under the contract Gold Kist was granted the exclusive right to manage the Flynn groves, and during the three-year contract period Gold Kist sent the Flynns thirteen checks totalling $199,312.61 for the sale of their pecans. The evidence further showed that the Flynns lost $8,000 in 1979 when they managed their own groves. In Septem-

ber 1983, however, the Flynns filed an action for damages and accounting against Gold Kist contending that it had damaged them under the contract by reason of the wrongful, negligent, fraudulent, and tortious conduct of the company and its employees in various stated ways and sought damages for breach of contract, fraud and tort, punitive damages, and attorney fees for bad faith.

The case was tried before a jury, and after the plaintiffs rested their case the court granted Gold Kist's motion for a directed verdict. The Flynns appeal.

1. " 'A directed verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced together with all reasonable deductions or inferences therefrom demands a particular verdict. OCGA § 9-11-50 (a). [Cits.]' " *Walker v. Housing Auth. of Atlanta*, 174 Ga. App. 585 (330 SE2d 729) (1985).

The appellants contend that it was error to grant a directed verdict as to the issue of damages for breach of contract because the evidence showed that Gold Kist did not use either "good faith" or its "best efforts" in its performance under the contract. They contend that they were wrongfully charged for chemicals that were not necessary or proper or were not used, that they were charged with supplies that went to other Gold Kist patrons, that Gold Kist made excessive charges for labor and failed to make the workers they hired work properly, that Gold Kist charged them with supplies that were not used or had no beneficial value to the pecan groves, that the company permitted its employees to play games with the equipment and then charged them with repair costs, that Gold Kist concealed certain "under the table" payments made to employees from another patron, that they were charged for gasoline used for the employees' personal use, that Gold Kist allowed the farm manager to steal pecans from their groves, that the company failed to keep rental equipment in proper working order thereby failing to harvest the pecans in time to receive the best possible price, and that it commingled their pecans with those of other patrons which were smaller in size and therefore paid the Flynns a lower price for theirs.

Appellees contend that Gold Kist's performance under the contract must be judged against the "good faith" standard implicit in OCGA § 13-4-20 which requires performance to "be substantially in compliance with the spirit and the letter of the contract and completed within a reasonable time." See *Crooks v. Chapman Co.*, 124 Ga. App. 718 (185 SE2d 787) (1971). Appellants argue that OCGA § 11-2-306 which pertains to output, requirements, and exclusive dealings and is found in the sales provisions of the UCC is controlling and requires Gold Kist to use its "best efforts" in the performance of the contract to be controlling. The Official Comments to this provision state that "the parties to such contracts are held to have . . . bound

themselves to use reasonable diligence as well as good faith in their performance of the contract." We therefore find that regardless of which provision of the code that this contract falls under, Gold Kist had a duty to perform in good faith.

At trial, the Flynns sought to prove, through the testimony of the Georgia Extension Services Director for Mitchell County, that the application of certain chemicals to their pecan groves was unnecessary. This testimony did contain the opinion that certain chemicals in certain amounts were not really necessary, but after the witness examined the yield and price per pound that Gold Kist's methods obtained he admitted that "the management part is no problem here." The contract gave Gold Kist the discretion to purchase all materials, including insecticides, that it deemed necessary for pecan production and in "performing, hereunder, Gold Kist shall act in accordance with current industry standards . . ." There was no evidence that Gold Kist's spraying program, while it differed from the recommendations of the extension service, was an abuse of its discretion under the contract with the exception of the use of an illegal chemical. The farm manager, Crosby, however, testified that certain chemicals were charged to the Flynns' account which were never received or used by him. There was also a question of when or if a certain amount of lime was applied to the pecan groves. Accordingly, as to these items a jury could find that the Flynns were wrongly billed for the use of the illegal chemical and those which were not received or used. There was also testimony that the Flynns were charged for other supplies and equipment which they did not use or receive and a jury question also arose as to the propriety of these charges.

The Flynns also presented evidence that they were charged for other items which they contended had no beneficial value to the pecan groves. For example, they were charged for 21 gallons of paint, 4 paint pans, 3 paint rollers, 1 paint edger, 10 paint brushes, and 4 wall scrapers when there was no painting done in the groves or to the farm manager's office. Other items they questioned included a camera, film, a videotape, 16 buckets and pails, 75 boxes of shotgun shells, shelves, moulding, etc. The jury should have been permitted to decide if these items, which appear to be unrelated to the growing of pecans, were necessary under the contract.

The Flynns' claim of excessive charges for labor is not supported by the evidence. Their accountant testified that time-keeping was done very poorly, but the farm manager testified that the nature of the work did not always permit the men to punch a time-clock. Determining the amount of labor necessary to produce, harvest, and market pecans was a judgment Gold Kist was entitled to exercise under the contract and absent bad faith in deciding the amount of labor necessary, there is no issue for jury resolution. There was no testi-

mony, other than the opinion testimony of the Flynns, that the charges for labor were excessive. Gold Kist enjoyed discretion under the contract as to this issue.

While there was testimony of horseplay involving the equipment used in the Flynn groves, there was no evidence that Gold Kist management either knew of or approved of such behavior. This conduct occurred during the first two years of the contract when one Brinkley was the farm manager. The evidence, however, showed that all of the necessary work was done in the groves and that they earned the most money during these years. There was testimony that certain pieces of equipment were damaged during employee horseplay when they conducted "pulls" between various pieces of equipment. A jury could determine that the Flynns should not have been billed for the costs of such repairs.

There was no evidence that payments made by another patron to Gold Kist employees affected the marketing of the Flynns' pecans. Indeed, the evidence showed that during this time, the Flynns' pecans commanded as good or better price than those of the other patron. As to the manner in which the pecans were marketed, the contract left this matter to Gold Kist's sole judgment and discretion. All the evidence as to the sale of the pecans indicated that they received a very good price for their pecans. There was, however, a jury question as to a missing wagon load of pecans for which the Flynns claimed they did not receive credit. Gold Kist's explanation that it was accounted for in a memo is not sufficient to prevent this issue from being decided by a jury.

While at first glance it appears that the Flynns were charged an excessive amount for gasoline during the years that Brinkley was the farm manager, there was no testimony that it was used for anything other than farm use. There was testimony by farm employees that Mrs. Brinkley's car was filled with the Flynns' gasoline, but it is not known whether she was using the car for farm errands. There was also no testimony as to the alleged amount of personal use, but the Flynns contend that the records show that they were charged $22,625 in 1980, $14,847 in 1981 and $8,895 in 1982 and that the 1982 figure should be used as the basis for determining the amount of overcharge for the two previous years. Absent evidence of improper use, there was no jury question as to this issue.

There was, however, a jury issue as to certain tools which the Flynns paid for, but which were not left on the farm after the termination of the contract, and a jury could find that they were entitled to recover their cost. The Flynns' claim that they were overcharged for oil and lubricants also raised a jury question because they were being charged an amount far greater than the amount at which these products could be purchased locally. While Gold Kist was not required

under the contract to purchase these products at the lowest possible price, they were required to exercise good faith in making these purchases. Based on the price charged to the Flynns and the price at which these items could be purchased locally, a jury question arose as to this issue.

The allegation that Gold Kist failed to keep rental equipment in proper working order and thereby delayed the harvesting of pecans is not supported by the evidence. The farm manager's testimony was uncontroverted that the equipment was checked during the summer prior to the harvest and found to be in proper working order. The evidence also showed only two instances in three years when equipment failed during the harvest season. The other instance involved the overturning of a wagon of pecans which were promptly picked up and sent off to market.

2. The Flynns' contention that a jury issue remained as to the tortious and fraudulent conduct and actions of Gold Kist is without merit. The issue of payments made by another patron to Gold Kist employees has been addressed in Division 1 above. The company was not responsible for the alleged theft of pecans by the farm manager, Brinkley. Under the doctrine of respondeat superior, the employer is not responsible for the intentional acts of one's employee which are committed outside the scope of his employment. *Lewis v. Millwood*, 112 Ga. App. 459 (145 SE2d 602) (1965); *Rivers v. Mathews*, 96 Ga. App. 546 (100 SE2d 637) (1957). The evidence showed that when Brinkley was confronted with the reported theft by his superior he resigned. The remaining issues contended to be tort damages have all been dealt with in Division 1 above as breach of contract damages. Accordingly, we find that the trial court did not err in granting a directed verdict as to the alleged tortious and fraudulent conduct of Gold Kist and its employees.

3. For the reasons stated in Division 2 above, the trial court did not err in granting a directed verdict as to the issue of punitive damages and attorney fees.

4. Appellant's remaining enumerations of error pertain to the admission of evidence at trial. As there are issues remaining for jury resolution which must be retried, we find it is unlikely that any alleged error will recur.

*Judgment affirmed in part and reversed in part. Benham, J., concurs. Beasley, J., concurs in the judgment only.*

DECIDED JANUARY 16, 1987 —
REHEARING DENIED JANUARY 29, 1987 —

*Frank C. Vann*, for appellants.

*Jay D. Bennett, G. Conley Ingram, John E. Stephenson, Jr.,* for appellee.